UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ILKB, LLC

                              Plaintiff,

            - vs -                          Civil Action No.

MATTHEW WHITWORTH and TRAINING PASSION
LLC,

                              Defendant.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ILKB, LLC ("Plaintiff" or "ILKB"), by its attorneys, Gordon Rees Scully

Mansukhani, for its Complaint for Damages and Injunctive Relief against Defendant Matthew

Whitworth and Training Passion LLC ("Defendants") respectfully alleges as follows:

### NATURE OF ACTION

1.      ILKB brings this action to protect its franchise system from Whitworth, a rogue,

former franchisee, and his business entity Training Passion LLC ("TP"), who illegally used their

prior relationship ILKB to misappropriate ILKB's good will, customers, and confidential

information to form a competing fitness business and improperly collude with a competitor, Fit

Theorem, Inc. ("Fit Theorem"), in breach of Whitworth's Franchise Agreement and federal and

state law.

2.      To this day, Defendants continue to use ILKB's proprietary programs and

confidential information, and have attempted to illegally access ILKB's systems to acquire more

of ILKB's confidential information.

3.      Recently, after having operated an ILKB franchise for half a decade, Defendants

changed the name of their business while retaining the same location, same contact information, same employees, and most importantly, ILKB's loyal customers.

4.      Rather than de-identify with ILKB, Defendants kept vestiges of their relationship with ILKB in order to retain those customers. In their marketing and advertising materials and their social media presence, passed off results customer obtained using the proprietary ILKB system as their own.

5.      Defendants' egregious conduct is an attempt by Defendants to line their own pockets at the expense of ILKB and the other franchisees in the system who continue to comply with the system's operational requirements in good faith.

6.      ILKB has invested significant time and money in building a franchise system of kickboxing fitness studios. The result is ILKB's innovative approach to fitness, marketing, and converting prospective leads into loyal and committed members. As in many franchise systems, protecting the brand and the integrity of the system are paramount concerns for the survival and success of the system as a whole.

7.      Defendants' illegal actions threaten to destroy that system.

8.      Consequently, ILKB seeks damages as described more fully below.

9.      ILKB also intends to seek preliminary and permanent injunctive relief due to the irreparable harm that Defendants will cause to ILKB if Defendants are not stopped.

10.     The relief requested herein is necessary to enforce ILKB's system standards and protect the integrity of the system against the Defendants, who are determined to create a competing brand through misappropriation of ILKB's customers and proprietary systems.

## THE PARTIES

11.     Plaintiff ILKB is organized under the laws of the State of New York with its

principal place of business at 1844 Lansdowne Avenue, Merrick, NY 11710. ILKB is the

franchisor of iLoveKickboxing.com, a franchise of physical fitness studios focused on

kickboxing. The ILKB franchise system consists of over 150 studios operating throughout the

United States and Canada.

      12.     Whitworth is a natural person who, upon information and belief, is a citizen of

Texas and resides in or around Sugarland, Texas. He is the signatory to a franchise agreement

with ILKB (the "Franchise Agreement") dated June 30, 2015. **Exhibit A.**

      13.     TP is a Texas limited liability company organized by Whitworth, which does

business in Texas. TP markets itself as a fitness business and does business under the name Fit

Theorem, offering both in person and online fitness classes.

      14.     Fit Theorem was founded by former ILKB franchisees Harjinder and

Ardamandeep Singh, who operated multiple ILKB locations in the Houston area. Based on

information and belief, Fit Theorem's business model relies on the misappropriation of ILKB's

proprietary system, confidential information, and good will. Fit Theorem's managers are

knowingly encouraging franchisees, like Whitworth, to violate their contracts with ILKB in order

to prop up their business.

## SUBJECT MATTER JURISDICTION

      15.     This Court has subject matter jurisdiction in this case under 28 U.S.C. § 1332.

Plaintiff is a citizen of New York. Defendants are Texas Citizens; thus, there is complete

diversity of citizenship between ILKB and Defendants, and the amount in controversy exceeds

$75,000, exclusive of fees and costs.

      16.     Subject matter jurisdiction in this Court also exists under the Defend Trade

Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 3

17.     Subject matter jurisdiction over the remaining claims also exists pursuant to 28 U.S.C. § 1367 because those claims for relief are so related to the other causes of actions as to form part of the same case or controversy.

## PERSONAL JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Defendants pursuant to New York's long arm statute, C.P.L.R. § 302(a)(1) because the Defendants transacted business in the State of New York and this action arises out of that business transaction.

19.     Personal jurisdiction exists under New York's long arm statute, C.P.L.R. § 302(a)(3) because the Defendants' actions caused injury in the state of New York and reasonably should have expected damages to occur in the state based on the prior, substantial revenue gained by the Defendants through their participation in interstate commerce.

20.     This Court also has personal jurisdiction over Defendants because they consented and submitted to personal jurisdiction in either New York or Nassau County, New York pursuant to the Franchise Agreement.

21.     Venue is this Court is appropriate under 28 U.S.C. § 1391.

22.     In addition, and pursuant to the Franchise Agreement, the Defendants waived any objection to the laying of venue in this Court. The Franchise Agreement and all related matters are expressly governed by the laws of New York, without regard to the principles of conflicts of laws, and provides that any dispute between ILKB and the Defendants shall take place in New York.

## THE DEFENDANTS' FRANCHISE AGREEMENT

23.     The relationships between ILKB and its franchisees are governed by franchise agreements, each of which contain essentially the same terms and provisions and are intended to

govern each franchisee's operation of a single iLoveKickboxing.com studio within a specified geographic territory.

24.     Pursuant to the Franchise Agreement, Whitworth operated an ILKB franchised studio in the League City, Texas territory.

25.     To protect ILKB's franchise business, trade secrets, and confidential information, including without limitation information regarding the "operational, sales, promotional, and marketing methods and techniques of the System," Article XI of the Franchise Agreement restricts Defendants from certain in-term activities which might harm ILKB and its franchise system.

26.     First, pursuant to Section 11.1(a), during the term of their franchisee, Defendants promised not to "operate, manage, own, assist or hold an interest in (direct or indirect as an employee, officer, director, shareowner, partner or otherwise), or engage in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, without our express prior written consent."

27.     Second, pursuant to Section 11.1(b), Defendants promised not to "(i) divert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, (ii) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System, or (iii) solicit without our prior consent any person who is at that time employed by us or any related entity to leave his or her employment."

28.     Pursuant to Article VIII, Defendants also agreed to operate in conformity with the methods and standards required of all franchisees. Defendants, like all other ILKB franchisees, are aware that other franchisees in the system are similarly bound.

29.     Under Section 8.2 of the Franchise Agreement, Defendants were required to keep the Confidential Operations Manual, a document developed to direct franchisees in how to operate their ILKB-branded business, confidential and return it at the end of their term.

30.     Under the Franchise Agreement, Defendants were required to maintain a telephone number for their franchise. At the end of the term, they are required to turn that number over to ILKB or cancel the listing. Ex. A §§ 8.9, 15.1.

31.     Under Section 9.1 of the Franchise Agreement, Defendants were prohibited from using ILKB's trademarks for any purposes not approved in the Confidential Operations Manual.

32.     Under Section 9.3 of the Franchise agreement, Defendants were prohibited from using any of ILKB's trade secrets and confidential and proprietary information for any purposes other than the operation of an ILKB franchise as described in the Confidential Operations Manual.

33.     Under Section 11.2 of the Franchise Agreement, Defendants agreed to a one-year non-competition agreement following their termination or separation from ILKB. That clause prohibits Defendants from either directly or indirectly "operat[ing], manag[ing], own[ing], assist[ing] or hold[ing] an interest in…, or engag[ing] in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business, within a radius of 25 miles of your Outlet or any other authorized retail location selling ILKB Services and Products, without our express prior written consent." This clause further prohibited using any confidential or proprietary information.

34.     Under section 15.1 of the Franchise Agreement, upon termination, Defendants were required to

        a.  Discontinue the use or display of ILKB Marks;

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 6

b.   cease operations of ILKB franchise location;

c.   contact Yelp, and other online websites to request removal of ILKB Marks used in connection with your ILKB franchise location;

d.   return all proprietary and confidential information as outlined in Section 15.2; and

e.   assign all interest and right to telephone numbers and listings to ILKB.

## ILKB'S INTELLECTUAL PROPERTY, TRADE SECRETS, AND CONFIDENTIAL INFORMATION

35.     At considerable effort and expense, ILKB has developed confidential and proprietary information concerning the marketing and sales of its franchises. Among other things, ILKB has conceived and developed various service marks and trade dress, business plans, service delivery strategies, training materials, cost models and budgets, and lead generation systems which are highly proprietary to ILKB. ILKB's trade secrets are at least partly contained within its Confidential Operations Manual.

36.     ILKB expends significant resources, in terms of capital investment and time, to develop customized marketing strategies to bolster the value of the iLoveKickboxing.com brand and sell franchises. For this reason, ILKB takes special precautions to maintain the confidentiality of its confidential and proprietary information.

37.     ILKB has the right to license the federally registered iLoveKickboxing.com® trademarks, service marks, logos, and derivations thereof (the "Marks") for use by its franchisees to be used solely in the operation of an ILKB branded business.

a.   The service mark iLoveKickboxing.com, Registration No. 4,009,496, registered on August 8, 2011.

---



b. The service mark                              , Registration No. 4,324,564,

registered on April 23, 2013.



c. The service mark                       , Registration No. 5,446,133,

registered on April 17, 2018.

38.     ILKB owns the distinctive and well-known iLoveKickboxing® system, which

offers in person and online fitness classes, which focus on kickboxing to the public under the

Marks.

39.     ILKB grants licenses to franchisees to use the Marks and participate in its

confidential and proprietary business systems pursuant to written franchise agreements, which

are reasonably and carefully tailored to protect ILKB's valuable confidential information,

reputation, goodwill, and other legitimate business interests.

40.     Under the Franchise Agreement, Defendants had a limited license to use the

Marks. Defendants agreed to only use the Marks in conjunction with the operation of their ILKB

franchises. They specifically agreed that they would not "display Marks except in the manner

[ILKB] authorize[d]." Ex. A § 8.3. Moreover, they acknowledged that "the use of the Marks

outside the scope of the terms of this Agreement without [ILKB's] written consent is an

infringement of the Owner of the Marks' and our exclusive rights, title and interest in and to the Marks." *Id.* at § 9.3.

41.      Over the course of their franchise relationship with ILKB, Defendants had complete access to and, upon information and belief, did access, significant quantities of information related to ILKB franchise model, which included marketing materials, methods, and opportunities; potential revenues associated with those opportunities, franchisee owner and contact information; customer and prospect lists; and ILKB's approach to meeting the needs and requirements of its franchisees.

42.      ILKB carefully safeguards its confidential and proprietary business information by, among other things, limiting access to such information to existing franchisees, maintaining computer security devices, and requiring franchisees to agree that they will not disclose confidential information to anyone outside of ILKB and its franchise system pursuant to Section 9.3 of the franchise agreements.

43.      Defendants, by virtue of the Franchise Agreement, gained access to this information and, pursuant to Section 9.3, promised to keep it confidential and only use it for ILKB business.

44.      Whitworth participated in regular meetings and trainings between ILKB and franchisees, which included discussions about planning, services, cost information, profit margins, sales training, strategic decisions with respect to ILKB's franchise system, and the future direction and long term growth challenges and opportunities of ILKB.

45.      Through their interaction with ILKB personnel and executives, Defendants have obtained a great deal of knowledge with respect to the personal fitness marketplace and marketing strategies which are proprietary to ILKB and were developed by ILKB for the sole

benefit of itself and its franchisees.

46. The above-mentioned information is not generally known, is costly to produce, and is difficult to obtain.

## DEFENDANTS' CONTRACTUAL BREACHES AND INTENTIONAL INTERFERENCE WITH THE ILKB FRANCHISE SYSTEM

47. Defendants, benefiting from the goodwill associated with ILKB's service marks and trade dress, and employing ILKB's trade secrets and confidential information, were successful in the opening and operation of their studio in Texas.

48. Defendants—as a result of their status as ILKB franchisees and manifestly unlawful actions—are in a unique position to improperly take advantage of the goodwill that ILKB has invested a significant amount of time and resources developing and cultivating with its franchisees.

49. Defendants have taken their knowledge of the ILKB system to Fit Theorem and are actively coordinating to violate the Franchise Agreement as well as state and federal law.

50. During the term of their Franchise Agreement, Defendants began a scheme to compete with ILKB by developing a new brand of fitness studio: Fit Theorem. On information and belief Fit Theorem would offer effectively the same services and seek to take advantage of the customer base that the Defendants developed using the ILKB system. It is unknown exactly how long the Defendants had been plotting, but the development of Fit Theorem dates back to 2018.

51. Based on information and belief, Whitworth was actively coordinating with Ardamandeep and Harjinder Singh to compete with ILKB while Whitworth was still a franchisee.

COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES – Page 10

52.     TP has no franchise agreement with ILKB. Based on information and belief, Whitworth was improperly operating TP in violation of his franchise agreement.

53.     Competing with ILKB during his franchise term was a material breach of the Franchise Agreement.

54.     Based on information and belief, Whitworth transferred confidential information to TP, Fit Theorem, and their employees in violation of the Franchise Agreement and state and federal law.

55.     In August 2020, Defendants rebranded the former Franchise Location as a Fit Theorem.

56.     Defendants' Fit Theorem location offers the exact same services as ILKB and service the exact same customers at the exact same location, 2640 E League City Pkwy #100, League City, TX 77573 and telephone number (281) 339-7357.

57.     Defendants continue to use nearly identical promotions to those they used while operating an ILKB franchise to market their Fit Theorem business.

58.     Defendants continue to use customer and staff results obtained using the ILKB system as well as ILKB testimonials to promote their new business. Indeed, the results and photos from many of these customers predate the creation of Fit Theorem.

59.     Despite rebranding to Fit Theorem, Defendants continued to use and try to access ILKB's systems and proprietary materials. On multiple occasions, Whitworth attempted to access ILKB's password protected system using a Fit Theorem email address.

60.     Based on information and belief, Whitworth continues to seek ILKB's confidential materials because he cannot operate his Fit Theorem business without them.

61.     Defendants' unique knowledge of ILKB's confidential information and strategies

will give Defendants a distinctly unfair advantage in competing with ILKB for business. Unlawfully possessing ILKB's proprietary information, such as that described above, would enable and have enabled the Defendants to make decisions about their own plans that take into account ILKB's confidential business information.

62.    Defendants have continued to use ILKB's intellectual property, including but not limited to its trademarks, trade dress, and service marks in violation of Article IX of the Franchise Agreement.

63.    Defendants have been using the same telephone numbers and addresses for the former franchise locations on business cards, their websites, and social media profiles.

64.    ILKB terminated its relationship with Defendants on September 7, 2020, by sending a notice of termination letter. This letter reminded Defendants of their post-termination obligations under the franchise agreement, including:

    a.  Immediately returning all copies of the Confidential Operations Manual and all promotional materials;

    b.  De-identifying with ILKB, including referencing themselves as formerly associated with ILKB;

    c.  Removing all ILKB marks and discontinuing any communications that suggest a relationship with ILKB;

    d.  Transferring all telephone numbers for the location to ILKB or canceling and delisting them;

    e.  Not competing with ILKB for 12 months unless Franchisor gives written approval; and

    f.  Paying $49,906.77 in due and owing fees.

65.    Defendants were also reminded of the consequences of failing to comply with their duties under the Franchise Agreement.

66.    Defendants remain in breach of all of these obligations.

## FIRST CAUSE OF ACTION

(Breach of Contract)

67.    ILKB realleges the allegations contained in paragraphs 1 through 66 of this Complaint as if set forth fully herein.

68.    Whitworth is a party to a valid and enforceable Franchise Agreement with ILKB.

69.    ILKB has substantially performed all of its duties associated with the Franchise Agreement.

70.    Pursuant to the terms of the Franchise Agreement, Defendants are prohibited from, inter alia, (a) directly or indirectly operating, managing, owning, assisting, or holding an interest in any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business; (b) diverting or attempting to divert any business or customer of the Franchised Business to any competitor; (c) doing or performing any act injurious or prejudicial to the goodwill associated with the Marks or the franchise system; (d) using telephone numbers from the former franchise locations; (e) using ILKB's Marks; and (f) using ILKB's confidential information.

71.    The in-term and post-term restrictive covenants are reasonable and necessary for the protection of ILKB's legitimate interest in its trade secrets and confidential information and the integrity of its franchise system.

72.    As described above, Defendants breached the terms of the Franchise Agreement by creating and operating the competing Fit Theorem brand and opening and operating it at the

same locations and contact information, using the same personnel, stealing ILKB's customer and confidential information, and using ILKB's Marks in their materials.

73.     In so doing, Defendants have diverted customers and other ILKB franchisees toward the competing enterprises and otherwise taken action injurious to the goodwill associated with the ILKB service marks, trade dress, and franchise system.

74.     If Defendants are not enjoined from operating a directly competitive business, soliciting franchisees, from violating their Agreements, and from using or disclosing ILKB's trade secrets and other confidential proprietary information, ILKB will suffer immediate and irreparable harm to its business and goodwill, including but not limited to: loss of business and commercial reputation, goodwill, business and economic opportunities, loss of use of its own property, and loss of use and disclosure to a competitor of this valuable confidential and proprietary information.

75.     Defendants have failed to pay amounts owed under the franchise agreement, including at least $49,906.77 in due and owing fees.

76.     In addition, as a proximate and direct result of the Defendants' actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, consequential, and liquidated damages.

## SECOND CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Common Law of the State of New York)

77.     ILKB realleges the allegations contained in paragraphs 1 through 66 of this Complaint as if set forth fully herein.

78.     By virtue of his contractual relationships with ILKB, ILKB gave Defendants access to trade secrets and confidential and proprietary information ("Trade Secret

Information")—information that is valuable to ILKB's franchise model and gives ILKB an advantage over competitors.

79.     Defendants have a common law duty prohibiting him from using Trade Secret Information procured during their franchise relationship with ILKB for any purpose other than for the benefit of franchise and, by extension, ILKB as franchisor.

80.     Defendants have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain by transferring to TP and Fit Theorem. On information and belief, all of Defendants know that they are improperly using ILKB's confidential information.

81.     ILKB is entitled to preliminary and permanent injunctive relief.

82.     Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

83.     In addition to giving rise to injunctive relief, the Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer substantial damages, including without limitation direct, incidental, and consequential damages, in an amount to be established at trial.

84.     Defendants' misappropriation of ILKB's Trade Secret Information was intentional, malicious, unlawful, unfair and otherwise improper, thereby making punitive damages appropriate.

## THIRD CAUSE OF ACTION

(Misappropriation of Trade Secrets under the Statutory Laws of the United States)

85.     ILKB repeats and realleges the allegations contained in paragraphs 1 through 84

of this Complaint as if set forth fully herein.

86.    The Trade Secret Information obtained by defendants relates to ILKB's business and services that are maintained and provided in interstate commerce.

87.    The Trade Secret Information obtained by defendants is a "trade secret" within the meaning of 18 U.S.C. § 1839(3) because, inter alia, it is secret and of value as a result of not being generally known as set forth above, and ILKB takes and has taken measures to prevent the secrets from becoming available to persons other than those selected by ILKB to have access thereto.

88.    Defendants have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain. They have shared this information with Fit Theorem, who know that this information has been illegally misappropriated, but nonetheless use it in the operation of their businesses.

89.    As a result of Defendants' misappropriation of ILKB's Trade Secret Information, defendants have and continue to violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

90.    Pursuant to Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A), ILKB is entitled to preliminary and permanent injunctive relief.

91.    Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

92.    In addition to giving rise to injunctive relief, Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer actual damages in an amount to be established at trial.

93.     By virtue of Defendants' bad faith and willful and malicious misappropriation of ILKB's Trade Secret Information, ILKB is entitled to an award for its damages, reasonable royalties, exemplary damages in an amount up to two times awarded damages and reasonable attorney's fees, as provided for by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b)(3)(B)-(D).

## FOURTH CAUSE OF ACTION

(Unfair Competition)

94.     ILKB realleges the allegations contained in paragraphs 1 through 66 of this Complaint as if set forth fully herein.

95.     Defendants have engaged in conduct intended to undermine, destroy and misappropriate the business of ILKB by using ILKB's Trade Secret Information to compete unfairly with ILKB in violation of defendants' contractual obligations and the common-law.

96.     Defendants' conduct constitutes common law unfair competition, and unless they are enjoined, ILKB will suffer irreparable injury for which it is no adequate remedy at law.

97.     In addition, as a proximate and direct result of Defendants' actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, and consequential damages.

## NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF

(Preliminary and Permanent Injunctive relief)

98.     ILKB re-alleges the allegations contained in paragraphs 1 through 97 of this Complaint as if set forth fully herein.

99.     For all the foregoing reasons, and ass monetary damages are inadequate to fully compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer

relationships, and future profits resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement, ILKB prays for a preliminary and permanent injunction as set forth in Paragraph A of its prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, ILKB demands judgment as follows:

A.      As monetary damages are inadequate to fully compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer relationships, and future profits resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement including: (i) offering, advertising, marketing or otherwise engaging in competitive services against ILKB for the duration of the Franchise Agreement and pursuant to the post-termination provisions specified under Section 11.2; (ii) using ILKB's trade secrets and confidential and proprietary information in a manner which would result in harm to ILKB and its franchise system; (iii) soliciting, directly or indirectly, any ILKB franchisees or prospects for benefit of the Fit Theorem brand; (iv) inducing or encouraging any ILKB franchisees to breach their respective franchise agreements with ILKB, including without limitation those provisions designed to preserve and maintain the uniformity of the system (Article VIII); (v) using ILKB's Marks; or (vi) using the former contact information for ILKB.

B.      An award of damages in an amount sufficient to compensate it for any

ascertainable and calculable damages, losses, and/or loss of revenues and opportunities occasioned by Defendants' wrongful conduct as described herein, including, but not limited to, payment of past and future lost royalties occasioned by Defendants' breach of contract, direct and indirect damages for misappropriation of trade secrets and confidential and proprietary information, and damages for tortious interference and unfair competition;

   C.  An award of pre-judgment interest on all such sums awarded;

   D.  An award of punitive and exemplary damages and reasonable royalties as the Court may deem appropriate; and

   E.  An award of costs, disbursements and attorneys' fees incurred in connection with this action, as well as any other and further relief as the Court may deem just, proper, and equitable.

 Dated:  October 12, 2020     GORDON REES SCULLY MANSUKHANI, LLP

          By: */s/ Peter G. Siachos*
            Peter G. Siachos, NY Bar #4436168

            1 Battery Park Plaza, 28th Floor
            New York, NY 10004
            Phone: (973) 549-2527
            Fax: (973) 377-1911
            Email: psiachos@grsm.com

            *Attorneys for Plaintiff ILKB*